UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

CHRISTIAN THOMAS RITTER            No. 10-13169
                                                    Section A
                                                    Chapter 13
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **REASONS FOR ORDER**

Christian Ritter's ("Debtor") Motion to Dismiss and this Court's *sua sponte* Motion to Convert to Chapter 7 were heard on January 31, 2012. After the hearing, the Court took the matter under advisement. For the reasons set forth below, Debtor's Motion to Dismiss will be GRANTED, and the Motion to Convert WITHDRAWN.

**A.    Facts**

Debtor filed a voluntary petition for relief under chapter 13 of the United States Bankruptcy Code on August 31, 2010. Debtor's home is co-owned with his long standing girlfriend and the mother of his four (4) children, Ms. Michelle Peavy ("Peavy"). The home is encumbered by a mortgage loan in favor of Bank of America Corporation ("BAC"). Ms. Peavy is also a signatory on the BAC note and liable *in solido* with Debtor. At the time of his filing, Debtor was twenty-eight (28) months past due to BAC and in foreclosure. The filing of this bankruptcy immediately stayed all actions to collect.

Debtor filed his Schedule of Assets and Liabilities, Statement of Financial Affairs and Proposed Plan of Reorganization on the same day as his Voluntary Petition for Relief. (P-1, 2). Thereafter, the chapter 13 standing trustee ("Trustee") filed a notice of deficiency outlining defects in the representations contained in Debtor's schedules. Specifically, Trustee opposed the calculation of Debtor's income, expenses, and claimed asset exemptions. (P-8).

On October 13, 2010, Debtor's schedules were amended to satisfy Trustee's objections. (P-10). The amendments included the addition of a $500.00 contribution from Ms. Peavy to Debtor's Schedule I. However, Debtor's disposable income and payments on his proposed plan, remained constant because he also increased his living expenses by a like amount (P-10).

Debtor's section 341(a) meeting of creditors was held October 18, 2010. Debtor's original plan proposed sixty (60) monthly payments of $375.00. Following the meeting of creditors, Trustee again objected to Debtor's proposed plan because it failed to pay creditors the liquidation value of Debtor's estate as required by 11 U.S.C. Sect. 1325(b). (P-15).

Debtor amended his proposed plan (P-16) and schedules (P-18) again to increase his plan payments and satisfy Trustee. However, BAC also objected to confirmation of Debtor's plan because it failed to satisfy BAC's outstanding arrearages. Debtor's confirmation hearing was continued three (3) times while Debtor and BAC worked out BAC's Objection. (P-34, 39, and 42). Under Debtor's final proposed plan, he agreed to pay $375.00 for four (4) months, then increase his payments to $504.00 for months five (5) through sixty (60). To accommodate the increased payment, Debtor revised Schedule I once again, increasing the monthly contribution by Ms. Peavy to $629.00.

The final hearing on confirmation was scheduled for February 8, 2011. Even then, both Trustee and BAC asserted continuing or amended objections to confirmation (P-44). At the confirmation hearing, BAC and Trustee came to agreements with Debtor provided certain amendments were made to the proposed plan. (P-48). The Court confirmed the plan, subject to amendments being supplied in a few days. Instead, it took more than three (3) months, service of a notice of deficiency and an Order to Show Cause against Debtor and his counsel (P-53, 55 and 57)

to get the final, confirmed plan into the record. An order confirming the fifth amended proposed plan was rendered on June 8, 2011. (P-64) ("Plan").

After the confirmation hearing, no payments were made by Debtor to Trustee. Trustee filed a Motion to Dismiss for failure to comply with the Plan on October 24, 2011. (P-72). As of October 2011, Debtor was in arrears for six (6) months (or $3,024.00) to Trustee. According to Trustee, the last payment was made on April 1, 2011.[1]

Debtor initially opposed the Motion to Dismiss and explained that his default was due in part to a personal injury accident. (P-74). At the hearing on Trustee's Motion to Dismiss, Debtor's counsel represented that a lawsuit resulting from the accident might generate sufficient proceeds to cure defaults under the Plan. Since Trustee was unaware of the suit, but willing to consider its value, Debtor was ordered to provide information regarding the damages claimed and merits to Trustee. (P-75). The hearing on the Motion to Dismiss was continued to December 13, 2011, pending Trustee's investigation of the lawsuit. (P-75).

Debtor provided the information to Trustee, who, at the continued hearing on December 13, 2011 advised the Court that the claims arising out of the accident appeared to have merit and could provide sufficient funds to cure the default. Surprisingly, Debtor changed his position at the hearing and argued for dismissal of his case, in effect the granting of Trustee's motion.

---

[1] During the pendency of the case, the Debtor made the following payments to Trustee:

| Date | Amount |
|---|---|
| 10/4/10 | $375.00 |
| 10/25/10 | $375.00 |
| 11/23/10 | $375.00 |
| 1/10/11 | $375.00 |
| 1/28/11 | $504.00 |
| 3/1/11 | $504.00 |
| 3/18/11 | $380.00 |
| 4/1/11 | $504.00 |

3

According to Debtor's counsel, Debtor wished to dismiss his case so that the lawsuit could be settled "without court supervision or interference." Counsel also represented that Debtor planned to use the proceeds to pay his home mortgage arrearage, but he might refile after this was done. This Court denied the Motion to Dismiss. (P-77). Based on Debtor's position at the hearing, the Court entered its own Motion to Convert *sua sponte* to a Chapter 7 to be heard at a later date after notice. (P-81).

Following denial of Trustee's Motion to Dismiss, Debtor sought dismissal on his own motion. (P-79). On January 24, 2012, Debtor filed an Objection to the Court's Motion to Convert to Chapter 7. Hearing on the Motion to Convert and Debtor's Motion to Dismiss was held on January 31, 2012.

Debtor is a welder and earns a flexible hourly wage depending on the location his services are performed. For offshore work, Debtor earns $35.00 per hour while onshore work generates between $20.00 to 25.00 per hour. Debtor has continued to work approximately 40 hours a week following his bankruptcy filing but has not had significant offshore jobs resulting in the lower hourly wage. Nevertheless, the income reflected on Debtor's final Schedule I fairly reflects Debtor's existing wage post-petition.

Debtor did not miss a significant amount of work as a result of his post-petition accident. He missed additional time due to Ms. Peavy's unrelated hospitalization, but his vacation leave covered that absence. Health insurance paid for medical expenses and costs for expert treatment and evaluation in connection with his lawsuit. The Debtor did not testify that payments for his post-accident medical treatment have been demanded from him or paid. Ms. Peavy is a full time student and has never had any income.

In addition to the defaults in payment to Trustee, Debtor is eleven (11) months behind post-petition on his mortgage.

When questioned as to why he was behind to both the Trustee and BAC, Debtor's only response was that he simply could not live on the money he made and pay Trustee and BAC.

**B.     Conversion to Chapter 7 under Section 1307(c)**

Section 1307(c) of the Bankruptcy Code provides that "...on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including --" (6) material default by the debtor with respect to a term of a confirmed plan.

Debtor has failed to make the monthly installment payments under his Plan since April 2011. He has also failed to make eleven (11) post-petition note payments to BAC.  As a result, Debtor is in material default of his Plan.  However, conversion of Debtor's case would not benefit creditors because the lawsuit that might ensure creditors a distribution is a post-petition asset only collectible by Trustee as long as Debtor remains in a chapter 13 case.  11 U.S.C. Sect. 541 provides that any property acquired after the filing of a petition for relief in chapter 7 or upon conversion of a case from chapter 13 to chapter 7 does not constitute property of the estate available for distribution to creditors.   See also 11 U.S.C. Sect. 348(f).   In contrast, property acquired after the petition date in a chapter 13 is available to pay claimants in the case.  11 U.S.C. Sect. 541, 1306(a).

For this reason and despite material and serious defaults in Debtor's Plan, conversion to chapter 7 is not in the best interest of creditors.

5

    **C.**    **Dismissal under Section 1307(b)**

Section 1307(b) provides that "[o]n request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable."

Applying the U.S. Supreme Court's decision in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007), the Fifth Circuit has held that "the right to dismiss under 11 U.S.C. Sect. 1307(b) is subject to a limited exception for bad-faith conduct or abuse of the bankruptcy process." *In re Jacobsen*, 609 F.3d 647, 649 (5th Cir. 2010).

The debtor in *Jacobsen* originally filed a Chapter 13 petition to escape creditors who claimed he had defrauded them. The debtor's schedules were replete with errors, undisclosed fraudulent transfers, and misrepresentations. When the chapter 13 trustee moved to convert the case to Chapter 7 under Sect. 1307(c), the debtor moved to dismiss the case under Sect. 1307(b). Despite the language in Section 1307(b), the bankruptcy court denied dismissal and converted the case after finding that debtor acted in bad faith and abused the bankruptcy process. The Fifth Circuit affirmed.

Thus, the hearing on Debtor's Motion to Dismiss focused on Debtor's good faith, or lack thereof, in seeking dismissal. In opening argument, Debtor's counsel represented that Debtor's defaults stemmed from multiple problems. First, counsel represented that Debtor's income had substantially decreased since the bankruptcy filing due to a shift in his work location. Second, counsel argued that Debtor lost income post-petition as a result of his accident and a separate unrelated hospital stay for Ms. Peavy. Finally, Debtor's counsel argued that medical expenses related to the automobile accident had depleted Debtor's income still further. These reasons were offered in support of both a dismissal and to explain Debtor's significant defaults under his Plan.

After this opening, Debtor testified. Debtor is a welder and earns a flexible hourly wage depending on the place his services are performed. For offshore work, Debtor earns $35.00 per hour while onshore work generates between $20.00 to $25.00 per hour. Debtor testified that he has continued to work approximately 40 hours a week following his bankruptcy filing but has not had significant offshore jobs resulting in a lower hourly wage. Nevertheless, when the Court compared the income reflected on Debtor's final Schedule I to the amount Debtor testified to earning, no change in income was indicated, much less proven.

Debtor was also questioned regarding any additional medical expenses or lost income due to Ms. Peavy's hospitalization or his accident. Debtor testified to missing some work due to his accident, but it was not a significant amount of time. He also represented that Ms. Peavy's hospitalization caused him to miss additional time, but that his vacation time covered his absence. Health insurance paid for medical expenses and medical costs for expert treatment and evaluation in connection with his lawsuit. He did not testify that payments for his medical expenses have been demanded from him or paid.

Since none of the reasons offered for default were actually present, the Court questioned Debtor about Ms. Peavy's contribution to the Plan of $629.00 per month. To the Court's surprise Debtor responded that Ms. Peavy was a full time student and had never had any income. When asked specifically about the representations made on Schedule I for her contribution, he had no answer.

During the hearing it was also revealed that Debtor was eleven (11) months behind post-petition on his mortgage. Since Debtor's Plan required that he make monthly payments to BAC as installments came due post-petition, this default was in addition to the twenty-eight (28) months he

7

was past due on the day he filed and the ten (10) months he was past due to Trustee.

Debtor argues that his Motion to Dismiss was filed in good faith and that "he has not hidden or attempted to conceal any assets, and has made full disclosure to the court and to the chapter 13 Trustee." Debtor first revealed the existence of his pending litigation at the hearing on Trustee's Motion to Dismiss. In an effort to remain in bankruptcy, Debtor's counsel offered the lawsuit to the Trustee as a means of bringing the Plan current. The details of the suit and its worth were not disclosed to Trustee until ordered to do so by the Court at that hearing. Debtor can hardly be credited with candor or full disclosure on this point.[2]

Debtor claims a minimal value in his estate, $3,937.50. This value does not include the proceeds of his lawsuit. Unsecured claims total $19,473.46 and under Debtor's existing Plan, distributions of twenty percent (20%) were anticipated. This is the barest of minimum distributions required under the bankruptcy code.[3] Nevertheless, Debtor does propose to make those payments. The problem with this case is not Debtor's Plan, but his inability to make the payments he has promised.

Debtor is an above the median debtor, which means he enjoys a level of income well in excess of the median average income of residents living in this district. Debtor owes BAC over $19,000.00 in prepetition past due payments. Additional amounts for administrative expenses (legal fees and trustee's commission) and a distribution to unsecured creditors equal to those they would

---

[2] Debtor's Motion to Dismiss acknowledges that his counsel "recommended [he] dismiss...and try to settle... the [personal injury] case without the interference of the bankruptcy court and perhaps refile." Perhaps Debtor's candor is in his admission to an intent to prefer one creditor over another with the only asset available for distribution.

[3] In order to confirm a chapter 13 plan, debtors must pay their unsecured creditors in aggregate, an amount equal to or exceeding the amounts they could realize after all of a debtor's nonexempt assets were liquidated and secured and priority claims, as well as administrative expenses were satisfied.

receive in a chapter 7 liquidation ($ 4,567.00 with a present value of $3,937.50) must also be paid. The sum of these amounts, plus a car note, requires Debtor to service, over sixty (60) months, aggregate plan contributions of $29,724.00 or $495.00 per month. Given Debtor's income, without any earnings from Ms. Peavy, this is simply impossible.

Debtor testified that Ms. Peavy is a full time student. She has been enrolled in nursing school since Debtor's filing. Further, she has one semester of course work and two (2) years of clinical training remaining. With four minor children at home, she does not work for pay and according to Debtor, never has. The troubling revelation in this case is the fact that Debtor and Ms. Peavy *never* had sufficient income to make their necessary payments.

It appears that household income, through Ms. Peavy's contribution, was adjusted upward, with no support, to satisfy the Plan payments necessary to stay in bankruptcy. Given that Debtor is represented by an experienced and frequent chapter 13 debtor's bankruptcy attorney, it is beyond explanation how this was effected. Under both professional and ethical canons, bankruptcy counsel is required to conduct due diligence into the truth or veracity of facts he offers to the Court and Trustee regarding confirmation. The Debtor signs his schedules, including Schedule I setting out his household income, under penalty of perjury.

Given that Ms. Peavy has never worked, and she and Debtor were twenty-eight (28) months in default on the BAC note, it stands to reason that a thorough analysis of their ability to pay not only the default but the ongoing BAC installments post-petition, would be a critical element of counsel's prefiling due diligence. When Trustee and BAC objected to the proposed plan as unfeasible, the multiple amendments to Schedule I to add Ms. Peavy's "contribution" appear to have been submitted to the Court without verification or worse.

9

Despite a wholly unsupportable Plan, Debtor obtained confirmation. Given what is now evident, it is not surprising that Debtor has only made eight (8) of his seventeen (17) required payments under the Plan.[4] Nor given Debtor's prepetition conduct, was it unpredictable that eleven (11) post-petition payments to BAC would also be missed. Despite these substantial defaults under the Plan, all of Debtor's creditors have been stayed from collection during the entire seventeen (17) month period.

Debtor now wishes to dismiss his case and use the settlement proceeds to prefer his home mortgage lender. Evidently counsel believes that the suit will only partially cure the twenty-eight (28) months of pre-petition arrearages and eleven (11) months of post-petition defaults. As a result, Debtor will need to refile bankruptcy to discharge unsecured claims and work out any remaining arrearage due BAC. In other words, Debtor has admitted that dismissal is simply to circumvent the distribution priorities of the bankruptcy code.[5] If this were not enough to establish Debtor's bad faith, he has also admitted to a probability of refiling bankruptcy once this is accomplished!

Debtor's conduct raises serious concerns regarding the good faith attendant to his initial filing for relief and subsequent request for dismissal. Bankruptcy reorganization is not a place for a debtor to delay foreclosure with no reasonable likelihood of reorganization. Debtor has already lived in his home for thirty-nine (39) months without paying a mortgage note because he misrepresented his household income. His reason for default is not because he has suffered

---

[4] The total amounts collected ($3,392.00) have been distributed to Debtor's counsel, William G. Cherbonnier, $2,174.00; BAC, $906.79 on pre-petition arrears of $19,605.57; and Trustee $311.21 for administrative time.

[5] Because the proceeds of the lawsuit are unencumbered, each unsecured creditor would receive a *pro rata* distribution of the amounts available through any settlement. This could substantially increase the distributions payable to unsecured creditors to perhaps as high as 100%.

economic, medical or life altering setbacks, but because he can not afford the home. That reason does not entitle Debtor to live free of his obligations. Nor does it justify dismissal of his case to prefer his lender with payments that should go to unsecured claimants.

Nevertheless, given the fact that Debtor can not service his Plan with his existing income, this Court sees no benefit to forcing Debtor to remain in chapter 13. Debtor's continued stay in chapter 13 already has resulted in staying collection efforts against him for more than seventeen (17) months. In exchange for this reprieve, he has only paid his attorney and dug himself deeper in debt to his mortgage lender. In short, his filing has been an abject failure, not because of external forces beyond his control, but a desire to work the system to his advantage while delivering as little as possible to claimants. Unfortunately, this will not change if he is forced to remain in chapter 13. Instead, he is likely to continue in his practice of nonpayment, while creditors are stayed from collection. As previously discussed, a chapter 7 conversion would simply allow Debtor to escape his obligations while retaining the proceeds of his lawsuit.

For the reasons set forth above, dismissal is the only legal option available to this Court. Because Debtor's future actions are speculative, if and when Debtor again seeks bankruptcy relief, the Court will review his conduct both in this case and after dismissal. At that juncture, the Court will determine if his new filing is in good faith.

### D. Conclusion

For the reasons set forth above, the Court will enter an Order in Accord with these Reasons.

New Orleans, La., March 9, 2012.

Judge Elizabeth W. Magner